## AMERICAN R. CO. OF PORTO RICO v. ORTEGA.

(Circuit Court of Appeals, First Circuit. December 5, 1924.)

No. 1754.

**1. Negligence ☞136(9) — Contributory negligence questions for jury, on conflicting evidence.**

Under the rule of the federal courts, which places the burden of proving contributory negligence on defendant, a plaintiff is entitled to have the question submitted to the jury, unless no other conclusion could be drawn from the evidence than that he was guilty of contributory fault.

**2. Railroads ☞307(6)—Company providing safeguards at crossing is under duty to operate same.**

A railroad company, which has assumed the duty of maintaining gates or chains at a highway crossing, and of providing a watchman to operate the same, cannot avoid liability for failure to close the crossing on the approach of a train, on the ground that it was under no legal obligation to so protect the crossing.

**3. Death ☞86(1) — Right to damages for wrongful death held not dependent on legal claim to earnings of deceased.**

In an action for wrongful death, under Code Civ. Proc. Porto Rico, § 61, which gives such right of action to the heirs of deceased, if an adult, and provides that "such damages may be given as under all the circumstances of the case may be just," a plaintiff, who was the father and sole heir of deceased, was not required to prove that he was legally entitled to any part of her earnings, but it is sufficient to establish his right to damages that he had received, and had a reasonable expectancy of further receiving, pecuniary assistance from her.

In Error to the District Court of the United States for the District of Porto Rico; Odlin, Judge.

Action at law by Antonio Ortega against the American Railroad Company of Porto Rico. Judgment for plaintiff, and defendant brings error. Affirmed.

Francis H. Dexter, of San Juan, Porto Rico, for plaintiff in error.

J. F. Henry, of Roxbury, Mass., for defendant in error.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

BINGHAM, Circuit Judge. This action was brought in the federal District Court for Porto Rico by Antonio Ortega to recover damages occasioned by the death of his daughter, Zoila Ortega, through the alleged negligence of the defendant at a grade crossing over the defendant's railroad in Puerta de Tierra, a ward in the municipality of San Juan; he having been declared by the District Court of San Juan, Second division, the sole and universal heir of his daughter, pursuant to section 909 et seq. of the Civil Code and section 19 of the Act of March 9, 1905, relating to special legal proceedings. It was brought under section 61 of the Code of Civil Procedure of Porto Rico, which provides:

"When the death of a person, not being a minor, is caused by the wrongful act or neglect of another, his heirs or personal representatives may maintain an action for damages against the person causing the death. * * * In every action under this and the preceding section such damages may be given as under all the circumstances of the case may be just."

There was a trial by jury, and a verdict for the plaintiff in the sum of $2,000, upon which judgment was entered, and this writ of error prosecuted.

The errors relied upon are the refusal of five requests for instructions submitted by the defendant.

[1] The first request was that the jury be instructed to find a verdict for the defendant. In support of this request the defendant contends that, on the evidence, no other conclusion could be reached than that the deceased was guilty of contributory negligence. The plaintiff's evidence tended to prove that the train of the defendant which caused the accident did not blow the whistle or ring the bell as it approached the crossing; that the defendant had erected posts supplied with chains for closing the crossing, and had provided a gateman to close the crossing on the approach of a train and to warn travelers upon the highway of the approaching train; that at the time of the accident the chains had not been put in place and the crossing closed, and the gatekeeper was in his gatehouse, and did not appear until after the accident occurred; that the deceased for some months prior to the accident worked at a place in the vicinity of the crossing and had occasion to pass over it, so that she was familiar with the conditions there existing and the protection afforded travelers; that, on the morning of the accident, she approached the crossing on foot, carrying a bundle; that, as she approached the crossing, her view of the track in the direction from which the train came was obstructed by a high fence until she was practically upon the track; and that she entered upon the track without notice of the approaching train, without warning

from the gatekeeper, and while the crossing was open and unobstructed by the chains. There was testimony introduced by the defendant in conflict with that of the plaintiff, but we think the evidence narrated was such that a jury might reasonably find the deceased was in the exercise of due care. But, under the federal rule, the plaintiff was entitled to go to the jury without submission of evidence of the deceased's due care, for in the federal courts the burden of the issue of contributory negligence is upon the defendant. The question of law raised by the defendant's motion is not whether there was any evidence from which the jury might find that the deceased was in the exercise of due care, but whether, on all the evidence, no other conclusion could be drawn than that she was guilty of contributory fault. Upon the latter question the evidence was in conflict and was properly submitted to the jury.

[2] The second request was:

"You are instructed that under the evidence there was no legal obligation on the part of the defendant company to maintain gates, chains, or other protective devices at the crossing where and when the accident occurred."

On this branch of the case the defendant's contention is that, as a matter of law, the railroad company was under no obligation to maintain gates or chains at the crossing unless the highway over which the railroad crossed was an insular highway, and that it was not shown at the trial that the crossing was a part of an insular highway. The evidence, however, showed that the defendant had undertaken to protect the public by establishing posts and chains to close the crossing and had stationed a gatekeeper there to operate the chains upon the approach of a train; that such protection was reasonable and necessary, and, being such, it was the company's duty to travelers to see that the chains were in position and the crossing closed when a train was approaching. Having assumed this duty with respect to the public, it is not now open to the defendant to contend that the highway was not an insular one, and that it was under no obligation to protect the crossing with posts and chains. The request was properly denied.

The third request was:

"You are instructed that the fact that the company maintained chains and a watchman at the crossing in question at the time of the accident and that if you believe from the evidence the watchman failed or neglected to place the chains before the arrival of the train at the crossing at the time that the deceased, Zoila Ortega, was approaching said crossing, you cannot find the defendant guilty of negligence with respect to such chains in the absence of any evidence showing that the deceased, Zoila Ortega, knew of the existence of such chains and relied upon their being placed upon the approach of a train over said crossing."

The request was properly denied, for there was evidence from which the jury might find that the deceased knew that the defendant maintained chains and a watchman at the crossing and relied upon their being in position upon the approach of a train over the crossing. The defendant evidently takes this view of the situation, for in its brief it fails to make any reference to this requested instruction.

[3] The next error complained of is the refusal of the court to give instruction numbered 9, as follows:

"You are instructed that there is no evidence in this case upon which you can base a verdict of damages in favor of the plaintiff."

As previously pointed out, this action is brought under section 61 of the Code of Civil Procedure by the plaintiff as sole and universal heir of his deceased daughter, Zoila, an adult. Section 61 gives a right of action for the death of an adult person, caused by the wrongful act or neglect of another, to the heir or personal representative of such adult and provides that in such action "such damages may be given as under all the circumstances of the case may be just." The defendant's contention is that, under this statute, the damages are limited to pecuniary losses sustained by the plaintiff from being deprived of the deceased's earnings that he would have been legally entitled to if death had not occurred; in other words, that the plaintiff must show that he was legally entitled to some portion of the earnings of the daughter in order to establish a pecuniary loss.

This is not the law. Statutes containing similar provisions are quite common. Section 377 of the Code of Civil Procedure of California and the provisions of the Montana Code and of Utah are practically the same. In Rogers v. Rio Grande Western R. R. Co., 32 Utah, 367, 90 P. 1075, 125 Am. St. Rep. 876, the Supreme Court, in discussing the question, said:

"In the case of the death of an adult child the recovery is limited to the probable benefits the parents would have received during his lifetime from the deceased child. Such benefits are, however, not to be limited in all cases to mere contributions of money, but may consist of the various elements that enter into the domestic relations of parent and child, living in one family, or otherwise. In such cases the aim of the law is to repair in a pecuniary way the loss sustained by the parent."

In Bond v. Railroad, 159 Cal. 270, 113 P. 366, 48 L. R. A. (N. S.) 687, Ann. Cas. 1912C, 50, the court held:

No damages can be given for pain or anguish inflicted on the deceased, but the pecuniary loss for which recovery may be had includes all pecuniary losses which the circumstances establish with reasonable certainty will be suffered by the beneficiary in the future because of the death.

See, also, the following cases: Morgan v. Railroad, 95 Cal. 510, 30 P. 603; Munro v. Reclamation Co., 84 Cal. 515, 24 P. 303, 18 Am. St. Rep. 248; Sneed v. Marysville Co., 149 Cal. 710, 87 P. 376, and Butte Electric Co. v. Jones, 164 F. 308, 90 C. C. A. 240, 18 L. R. A. (N. S.) 1205, and Alder Co. v. Fleming, 159 F. 593, 86 C. C. A. 419, construing the Montana statute.

Franklin v. South Eastern Ry. Co., 3 Hurlst. & Nor. 212, was a case where the father sued for the death of a son, a young man earning good wages and well disposed to assist his father, and the court said:

"We do not say that it was necessary that actual benefit should have been derived; a reasonable expectation is enough, and such reasonable expectation might well exist, though, from the father not being in need, the son had never done anything for him."

And the Supreme Court, in construing the federal Employers' Liability Act (Comp. St. §§ 8657–8665), under which damages are limited to pecuniary losses, recognizes that the measure of damages differs according to the relationship existing between the parties plaintiff and decedent; that under a certain relationship an action may be maintained for the loss of services or support to which the beneficiary was legally entitled, while, under a different relationship, the damages of the plaintiff may consist only in the loss of a prospective benefit to which he was not legally entitled, but of which he had a reasonable expectation of receiving, but for the wrongful death. Michigan Central R. R. v. Vreeland, 227 U. S. 59, 70, 72, 33 S. Ct. 192, 57 L. Ed. 417, Ann. Cas. 1914C, 176; Gulf, Colorado, etc., Ry. Co. v. McGinnis, 228 U. S. 173, 174, 33 S. Ct. 426, 57 L. Ed. 785.

The evidence in this case showed that the daughter was about 26 years of age; that she made her home with her father, though away at work at the time of the accident; that, while out at work, she aided him financially by monthly money payments; and that, when she was at home, she assisted him in the fields and in the home. There was, therefore, evidence in the case upon which to base a verdict of damages, and the requested instruction was properly refused.

The last request relied upon was:

"You are instructed that, if you believe from the evidence that the whistle or bell of the locomotive, or both, were sounded before the train reached the crossing, so that people exercising ordinary care could have heard such whistle or bell at or near such crossing, then defendant cannot be held to be negligent, although you may find from the evidence that the chain was not placed."

This request is so indefinite that it might properly have been refused on that ground alone. If it means that the defendant could not be found to be negligent if the sole fault of the defendant consisted in its failure to have the chain in place, it was clearly wrong. The defendant in its brief argues that the court, by refusing to give the instruction, "deprived the railroad company of an opportunity to have the jury consider the contributory negligence of the deceased, if it should find that the whistle and bell of the locomotive was sounded before the train reached the crossing." If the request can be given such meaning, the defendant was not harmed, as the court, in its charge, instructed the jury fully on the question of contributory negligence.

The judgment of the District Court is affirmed, with costs to the defendant in error.